ROSEMONT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25489.   Promulgated November 12, 1929.

*E. S. Parker, Jr., Esq.*, and *J. L. Elliott, C. P. A.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

OPINION.

GREEN: The parties have proceeded upon the assumption that the taxes for the year 1925 are in controversy. The respondent has proposed no deficiency for that year. Neither has he rejected claim in abatement for that year. We must, therefore, on our own motion, dismiss the proceeding, as far as it pertains to the year 1925, for lack of jurisdiction. *Sowers Manufacturing Co.*, 16 B. T. A. 268, 272.

As to the remaining years 1921 to 1924, inclusive, the question is as to the total cost of the lots sold during those years and the amount to be allocated to each lot as its cost. The respondent determined that the total cost of all the lots to the petitioner was $197,542.90, as set out in our findings. He further determined that $127,605.66 of the $197,542.90 represented the cost of the lots sold during the years 1921 to 1925, inclusive, and that the balance, or $69,937.24, represented the cost of the lots remaining unsold on December 31, 1925.

According to the schedules attached to the petition, the petitioner, at the time the petition was filed, contended that the total cost of the lots to it was $237,956.71, made up as follows:

| | | |
|---|---:|---:|
| Original cost of land | | $110,000.00 |
| Improvements: | | |
| 1922 | $28,532.15 | |
| 1923 | 16,257.45 | |
| 1925 | 44,454.24 | |
| | | 89,243.84 |
| Interest and taxes (1915–1920) | | 38,712.87 |
| Total cost | | 237,956.71 |

It further contended, as set out in the schedules attached to the petition, that the total cost of $237,956.71 should be allocated to the lots sold and unsold, as follows:

| Lots sold during year— | Cost |
|---|---:|
| 1921 | $13,781.75 |
| 1922 | 41,297.14 |
| 1923 | 42,123.41 |
| 1924 | 33,286.77 |
| 1925 | 32,193.68 |
| | 162,682.75 |
| Lots remaining unsold at December 31, 1925 | 75,273.96 |
| Total cost of all lots | 237,956.71 |

No evidence was offered as to the cost of improvements. The respondent's determination of the cost of improvements is, therefore, sustained.

The respondent in his determination did not include, as a part of the cost of the lots sold, any portion of the amount of $38,712.87 representing interest and taxes paid on the Rosemont property during the years 1915 to 1920, inclusive. As already stated, the petitioner, in the schedules attached to its petition, contended that the full amount of $38,712.87 should be capitalized as a part of the cost of the property. In its brief, however, it concedes that such part of the $38,712.87 as it had allocated to the cost of the lots sold during the years 1921, 1922, and 1923 should be eliminated as representing a part of such cost, or, in other words, that on the lots sold during the years 1921, 1922, and 1923, the cost should not include any amount paid for interest and taxes during the years 1915 to 1920, inclusive. See *Ottawa Park Realty Co.*, 5 B. T. A. 474; *Arthur C. Fraser*, 6 B. T. A. 346; affd., C. C. A. 2d Cir., 25 Fed. (2d) 653; and *Westerfield* v. *Rafferty*, 4 Fed. (2d) 590.

On page 2 of its brief, the petitioner states:

The respondent and the petitioner have agreed that the carrying charges totalling $38,712.87 shall be eliminated in computing the taxable gain on the sale of the lots for the years 1921, 1922 and 1923 and shall be included as it affects each lot in computing the taxable profit for the years 1924 and 1925.

The admission made by counsel for the respondent at the close of the hearing, was as follows:

May it please your Honor, I want to make an admission of record, though, with reference to the carrying charges for 1924 and 1925. The respondent will admit that they may be included as part of the costs, but, of course, the allocation, the respondent contends, would be on the pro rata basis.

As to those expenses for 1921 and 1922, it is the respondent's position that the law has been well settled in *Westfield* vs. *Rafferty*, 4 Fed. 2nd. 590, a decision by the District Court in New York, I believe. Now, in reference to the carrying charges in 1924 and 1925, Article 1561, Regulations 65, settles it as far as the Commissioner's position is concerned. In other words, they say they may be included as a part of the cost of the lot where they have not been deducted during the current year. Well, the proof here is very clear that they did not deduct it in the years in which they were paid. They had no income. They were not deducted on their books at that time.

This admission is so ambiguous that we must disregard it altogether. It refers specifically to " carrying charges for 1924 and 1925 " as to which there are no facts in the record, the only facts relative to any so-called carrying charges being that during the years 1915 to 1920, inclusive, the interest and taxes amounting to $38,712.87 were paid on the Rosemont property. The respondent's determination that the total cost of the property was $197,542.90 should not, therefore, be disturbed. See, also, *Central Real Estate Co.*, 17 B. T. A. 776.

With respect to the allocation of the cost of the property to the lots sold during the taxable years, the evidence is likewise insufficient to prove that the respondent's allocation was erroneous. The respondent's determination was based upon a revenue agent's report. The report was admitted in evidence as petitioner's Exhibit No. 1. Therein, the agent stated that he used the cost that was shown on the petitioner's books. But there was testimony at the hearing to the effect that at that time the petitioner had made no allocation of cost to each separate lot, so we do not know how the cost used by the respondent was actually determined. Subsequent to the agent's examination, the petitioner employed a certified public accountant to ascertain the total cost of the property and to allocate to each separate lot a portion of such cost. The accountant's report was not placed in evidence. The petitioner was satisfied to rest with testimony to the effect that the lots in Block 1 were more valuable in 1915 than those in Block 19. But there is no evidence tending to show in dollars and cents the cost which should be allocated to each separate lot sold during the years in question, nor is there any evidence as to the cost of each lot as determined by the respondent and in the absence of such evidence, we must give judgment for the respondent.

There is another matter which we think should be mentioned, and that has to do with the selling price of the lots. It is not an issue in the case, and neither party makes any contention that the sales

price is in issue. But the petitioner sought to have the record show the exact location and sales price of each lot, which were facts not shown in the revenue agent's report. To this end it was stipulated at the hearing that the sales price of each lot, as set forth in the schedule attached to the petition, was correct. It was also agreed that the respondent's determination of the total sales was correct. Upon examination of the schedule, however, we find that there is a discrepancy of $100 between it and the respondent's determination of the total sales for the year 1921, and a like discrepancy of $512.81 for the year 1922. The record does not show what the respondent determined the sales to be for the years subsequent to 1922, and we are unable to make a comparison as to those years. But on account of the discrepancies already disclosed, we are unable to make a finding as to the selling price of each lot, together with its block location.

*Judgment will be entered for the respondent.*